UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARMEN RODRIGUEZ,

       Plaintiff,

v.                               Case No. 8:05-CV-1295-T-24TBM

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

       Defendant.

_____/

**O R D E R**

This cause comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 22). Plaintiff opposes this motion (Doc. No. 24).

**I.**     **Background**

On or about May 11, 2005, Plaintiff filed an action for disability benefits against Defendant in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (Doc. No. 2). On July 12, 2005, Defendant timely removed this case stating that this action is a federal question action because Plaintiff seeks disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Doc. No. 1). On September 9, 2005, this Court entered an Order in which it granted Defendant's motion to dismiss the complaint and strike the jury demand in that Plaintiff's complaint was based on state law and preempted by ERISA (Doc. No. 6). In that Order the Court also granted Plaintiff leave to file an amended complaint. On September 22, 2005, Plaintiff filed her Amended Complaint seeking long term disability benefits under ERISA (Doc. No. 7). Defendant now moves for summary judgment on the Amended Complaint.

1

At all time relevant to this case, Plaintiff was employed by The Coca-Cola Company. Plaintiff was a participant in an employee welfare benefits plan ("the Plan") sponsored by her employer (Doc. Nos. 8, ¶3 and 25, A.R. LL0001-LL0038).[1]  The Plan provided Long Term Disability ("LTD") benefits to eligible plan participants (Doc. No. 8, ¶3).  The LTD benefits under the Plan were insured by a Group Disability Income Policy, number GF3-850-281390-01 ("the Policy"), issued by Defendant to The Coca-Cola Company (Doc. Nos. 8, ¶3 and 27, McGee Aff., ¶4).  Pursuant to the terms of the Policy and the Plan, Defendant has authority "to construe the terms of this policy and to determine benefit eligibility hereunder" (Doc. No. 25, A.F. LL0033).

According to the Policy, LTD benefits coverage is payable to a participant as follows:

**Disability Benefit**

When [Defendant] receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, [Defendant] will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy.  The benefit will be paid for the period of Disability if the Covered Person gives [Defendant] Proof of continued:

1.      Disability;

2.      Regular Attendance of a Physician; and

3.      Appropriate Available Treatment.

(Doc. No. 25, A.R. LL0016).  The Policy defines certain relevant terms as follows:

**"Proof"** means the evidence in support of a claim for benefits and must be submitted in a form or format satisfactory to [Defendant]. (Doc. No. 25, A.R. LL0008).

_____

[1]On August 31, 2006, Defendant filed the Administrative Record of Plaintiff's claim (Doc. No. 25).  Citations to the Administrative Record are designated with "A.R." followed by the stamped page number.

**Elimination Period:**

The greater of:

a.      the end of the Covered Person's Short Term Disability Benefits; or

b.      180 days.

(Doc. No. 25, A.R. LL0003).

**"Disability"** or "**Disabled"** means:

i.      if the Covered Person is eligible for the 24 Month Own Occupation benefit, **"Disability"** or "**Disabled"** means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii.     thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(Doc. No. 25, A.R. LL0006).

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

(Doc. No. 25, A.R. LL0007).

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, [Defendant] will consider the Covered Person's occupation as it is normally performed in the national economy.

(Doc. No. 25, A.R. LL0008).

On February 23, 1999, Plaintiff was hired by The Coca-Cola Company (Doc. No. 25, A.R. LL0050). Plaintiff's job title was Administrative Specialist II (Doc. No. 25, A.R. LL0050 and LL0194). The Coca-Cola Company's description of this job reveals that it is largely a sedentary position that requires performance of mostly clerical functions (Doc. No. 25, A.R. LL0194-LL0202). By way of example, Plaintiff's duties included answering phones, processing

3

incoming and outgoing mail, and preparing correspondence (Doc. No. 25, A.R. LL0194-LL0195

and LL0197).  Additionally, according to Jeffrey R. Zoellner, a Human Resource Manager for

The Coca-Cola Company, Plaintiff:

> [H]as to work with both the general public (collecting resumes, calls and general inquires [sic] in person and or by phone), must be able to walk around a multilevel level [sic] non air-conditioned plant posting materials in on [sic] plant bulletin boards, Met [sic] outside and set up periodic visits from our safety shoe mobile, collect and distribute service award boxes along with general office supplies, collect and process mail and check, balance and process department invoices.  She also must have the where-with-all and skills to use Company software (Word, Excel, websites, etc.) and work with detail and type extensive/lengthy reports (investigation tapes, etc.)

(Doc. No. 25, A.R. LL0194).  As discussed in greater detail below, Plaintiff's occupation as a

Administrative Specialist II was generally sedentary in the national economy (Doc. No. 25, A.R.

LL0207-LL0210).

On October 8, 2003, Plaintiff presented to Dr. Robert M. Dean, M.D., an internist,

complaining of neck and back pain following an automobile accident (Doc. No. 25, A.R.

LL0172-LL0175).  On October 27, 2003 and November 10, 2003, Plaintiff visited Dr. Dean

again complaining of neck pain and pain in her left shoulder (Doc. No. 25, A.R. LL0167-

LL0171).

On January 13, 2004, Plaintiff returned to Dr. Dean complaining of dizziness and an

inability to work (Doc. No. 25, A.R. LL0165-LL0166).  Dr. Dean referred Plaintiff to a

neurologist.  January 16, 2004 was Plaintiff's last day of work at The Coca-Cola Company (Doc.

No. 25, A.R. LL0050).  On January 19, 2004, Plaintiff claimed short term disability benefits

under The Coca-Cola Company's Short Term Disability Plan (Doc. No. 25, A.R. LL0050 and

LL0163).  Plaintiff was not eligible to receive LTD benefits under the LTD Plan and Policy until

July 17, 2004 (Doc. No. 25, A.R. LL0050).

4

On January 22, 2004, Plaintiff was examined by Dr. Harish J. Patel, M.D., a neurologist, and an MRI was conducted (Doc. No. 25, A.R. LL0183).  Plaintiff's MRI showed legions suggestive of multiple sclerosis ("MS").  On January 27, 2004, Plaintiff again visited Dr. Dean and was still complaining of dizziness (Doc. No. 25, A.R. LL0163-LL0164).

On February 4, 2004, Plaintiff underwent a lumbar puncture which showed elevated IgG synthesis rate and positive oligoclonal bands which support a diagnosis of multiple sclerosis (Doc. No. 25, A.R. LL0057, A.R. LL108, and LL0149-LL0150).  On March 26, 2004, Plaintiff had her initial consultation with Dr. Robert Wilson, D.O., a board certified neurologist, who evaluated her for multiple sclerosis (Doc. No. 25, A.R. LL0245-246).  Dr. Wilson's examination of Plaintiff revealed that she was normal except for "decreased rapid alternating movements of the left hand" (Doc. No. 25, A.R. LL0108 and LL0246).  Dr. Wilson's impression was that Plaintiff had "relapsing-remitting multiple sclerosis" and asthma (Doc. No. 25, A.R. LL0246).  Dr. Wilson prescribed the drug Betaseron and recommended a serologic workup.

On May 17, 2004, Plaintiff returned to Dr. Wilson for a follow up appointment (Doc. No. 25, A.R. LL0242).  Dr. Wilson's neurological examination of Plaintiff was again normal and her gait was steady (Doc. No. 25, A.R. LL0242).  Dr. Wilson's impression was that Plaintiff suffered from "relapsing multiple sclerosis" and he recommended that the Plaintiff take the drugs Provigil and "ibuprofen with the Betaseron" (Doc. No. 25, A.R. LL0242).

On June 12, 2004, Dr. Wilson completed an Attending Physician's Statement with respect to Plaintiff in which he made a diagnosis of multiple sclerosis ("MS") with symptoms of optic neuritis, gait dysfunction, and cognitive dysfunction (Doc. No. 25, A.R. LL0293).  Dr. Wilson further indicated that Plaintiff had a Class 4 physical impairment, i.e., a moderate limitation of functional capacity, capable of clerical/administrative activity and a Class 1

5

mental/nervous impairment but no cardiac impairment (Doc. No. 25, A.R. LL0294).

Dr. Wilson also completed a Functional Capacities Form[2] wherein he stated that in an average 8 hour work day, Plaintiff could occasionally, i.e., up to 1/3 of the time, sit, drive, lift up to 10 pounds, and repetitively use her wrists, elbows, and ankles (Doc. No. 25, A.R. LL0144). However, he further opined that Plaintiff was completely unable to stand, walk, squat, bend, kneel, climb, push, pull, reach, grasp, repetitively use her shoulders, or lift more than 10 pounds (Doc. No. 25, A.R. LL0144). Dr. Wilson provided no objective medical findings/records to support the listed restrictions and limitations (Doc. No. 25, A.R. LL0144 and A.R. LL108). On June 18, 2004, Plaintiff and The Coca-Cola Company submitted Plaintiff's LTD benefit claim to Defendant (Doc. No. 25, A.R. LL0194-0202 and LL0293-0298).

On July 12, 2004, Plaintiff was again examined by Dr. Wilson (Doc. No. 25, A.R. LL0145). Plaintiff's neurological exam showed "decreased rapid alternating movements bilaterally in the arms" and an "unsteady gait" (Doc. No. 25, A.R. LL0145). The remainder of the neurological exam was normal (Doc. No. 25, A.R. LL0145). Dr. Wilson listed "relapsing MS" and "sinusitis" as his impression of Plaintiff's condition.

After receiving Plaintiff's LTD benefits claim, Defendant had Plaintiff's file reviewed by a vocational consultant, Janette Purtell, MRC, CRC, CDMS, CCM (Doc. No. 25, A.R. 0207-0210). In her August 2, 2004 Occupational Analysis, Ms. Purtell noted that The Coca-Cola Company's job description of Plaintiff's job as Administrative Specialist II was "light secondary [sic] to significant mobility requirements" (Doc. No. 25, A.R. 207). Ms. Purtell determined that Plaintiff's occupation, according to the U.S. Department of Labor Dictionary of Occupational

---

[2]The Court notes that it cannot determine the date the Functional Capacities Form was completed by Dr. Wilson due to poor copy quality and penmanship.

Titles, was that of a secretary and generally sedentary in the national economy.  Ms. Purtell's

analysis contained the following language:

> THIS IS A DEPARTMENT OF LABOR OCCUPATIONAL DESCRIPTION.  THIS
> IS A BASIC DESCRIPTION, WITHOUT INPUT FROM A VOCATIONAL
> PROFESSIONAL.
>
> IF A CLAIM DETERMINATION IS BEING CONSIDERED ON THE BASIS OF
> THIS INFORMATION, DISABILITY CASE MANAGER SHOULD CONSIDER
> A REFERRAL FOR A COMPLETE VOCATIONAL CASE MANAGER FILE
> REVIEW TO DETERMINE IF FURTHER INVESTIGATION, INCLUDING BUT NOT
> LIMITED TO, A LABOR MARKET SURVEY IS NEEDED.  Last DOT update: **1989**

(Doc. No. 25, A.R. LL027 (emphasis in original)).

Defendant also submitted the medical records and test results from Plaintiff's treating

physicians to two independent physicians, Drs. Jares and Pick, for assessment (Doc. No. 25,

A.R. LL0106-LL0111 and LL0131-0134).  In a report dated August 31, 2004, Dr. Joseph Jares,

III, M.D., one of the independent physicians and a board certified neurologist, confirmed that

Plaintiff's medical history, physical examinations, and test results supported diagnoses of neck

and low back pain and multiple sclerosis (Doc. No. 25, A.R. LL0108 - LL0109).  Dr. Jares noted

that Plaintiff's employment was "as an administrative specialist level II for the Coca-Cola

Company, a job considered light due to significant mobility requirements" (Doc. No. 25, A.R.

LL107).  Dr. Jares also noted that the "records indicate that [Plaintiff] retains the ability to work

in a clerical or sedentary occupation, based upon her normal neurologic examination" (Doc. No.

25, A.R. LL0108).  Dr. Jares recognized Plaintiff's subjective reports of memory and cognitive

difficulties, however, he further noted that the only mental status testing submitted by Dr. Patel

was normal, that Plaintiff had not submitted any neurophysiological testing, and that Dr. Wilson

gave Plaintiff no mental/nervous limitations on the Functional Capacity Form (Doc. No. 25, A.R.

LL108).

With respect to Plaintiff's impairments and restrictions and limitations on physical

activities, if any, Dr. Jares wrote:

> Based upon the available medical records from an objective physical standpoint, there
> is no reason why [Plaintiff] cannot perform a sedentary occupation.  Depending upon
> her degree of neck and lower back pain, she might need the opportunity for breaks for
> repositioning, stretching, etc.  However, from a purely MS standpoint, she does not have
> any limiting symptoms which would preclude her from working in a sedentary
> occupation.[3]  Dr. Wilson's latest notes do not comment upon the persistence of any
> vertigo.  He does not comment upon any ongoing cognitive issues or depression.  It is
> not known if she responded to Provigil for fatigue.
>
> From a purely objective neurological standpoint, [Plaintiff] retains the ability to work in
> a sedentary position with the limitations of lifting no more than 10 pounds.  She is
> able to stand for 1 hour, walk for 1 hour, sit without limitation, bend, stoop, kneel,
> crawl, reach, and she is able to use her upper and lower extremities in a constant or
> repetitive fashion without limitations. [Plaintiff] should avoid exposure to warm
> environmental temperatures because of the chance of exacerbating her MS.  She
> should avoid completely exposure to dangerous machinery and heights due to potential
> loss of balance.  Restrictions on her driving are not necessary at this time.

(Doc. No. 25, A.R. LL0109-LL0110).  Dr. Jares also stated that these limitations would be

indefinite, unless Plaintiff's MS went into remission (Doc. No. 25, A.R. LL0110).  Importantly,

with respect to Dr. Wilson's restrictions and limitation, Dr. Jares wrote:

> [Plaintiff]'s restrictions and limitations of no work, placed by her attending physician,
> are excessive.  Also he indicates that [Plaintiff] is unable to stand or walk, which again
> would not be consistent with his description of her physical examination, namely that
> her neurological function is normal.

(Doc. No. 25, A.R. LL0110).  Furthermore, Dr. Jares wrote:

> [Plaintiff] indicates that she is not driving, that she sometimes uses a cane and a
> wheelchair, that she cannot go to a shopping mall, but that she is capable of doing
> grooming and other self-care. [Plaintiff] reports that the fatigue requires her to take
> frequent naps and that she could not sit for more than one-half hour because of leg
> pain.  She does small household chores, such as making it [sic] beds and doing dishes,
> planning and making meals, and on weekends visits friends and goes out to movies.
> These activities would indicate that [Plaintiff] retains the ability to work in a sedentary

---

[3]Dr. Jares' citations to supporting references omitted here.

occupation.

In a report dated August 31, 2004, Dr. Robert Y. Pick, M.D., another independent physician and a board certified orthopedic surgeon, determined that "no specific orthopedic musculoskeletal condition or diagnosis has been substantiated in the files provided" (Doc. No. 25, A.R. LL0132). Dr. Pick further noted that:

> The records indicate [Plaintiff] was involved in MVA, and consequently she may have sustained a back strain, a temporary self-limiting soft tissue condition.[4] This resolved uneventfully without any sequelae or residuals.

(Doc. No. 25, A.R. LL0132). Dr. Pick opined that, "no restrictions or limitations on physical activities are applicable from an orthopedic or musculoskeletal perspective" (Doc. No. 25, A.R. LL0132-LL0133). However, Dr. Pick admitted that the diagnosis of MS was not within his area of expertise and recommended that Plaintiff be assessed by a neurologist (Doc. No. 25, A.R. LL0132).

On September 7, 2004, Defendant sent Plaintiff a letter denying her claim for LTD benefits (Doc. No. 25, A.R. LL0124-LL0127). The September 7, 2004 letter concluded that Plaintiff did not meet the definition of disability[5] and reviewed Plaintiff's medical history as well as Defendant's basis for the denial of benefits (Doc. No. 25, A.R. LL0124-LL0126). The September 7, 2004, letter contained a statement of Plaintiff's administrative rights under ERISA (Doc. No. 25, A.R. LL0126-LL0127).

On September 22, 2004, Plaintiff wrote a letter to E. Neville Isdell, Chairman of the Board of The Coca-Cola Company (Doc. No. 25, A.R. LL0100). In her September 22, 2004,

---

[4]Dr. Pick's citations to supporting references omitted here.

[5]The Court notes that the September 7, 2004 letter utilized an incorrect definition of disability.

letter, Plaintiff stated that she had been terminated from her employment with The Coca-Cola

Company.  With respect to her diagnosis of multiple sclerosis and disability she wrote:

> After a couple of months, my condition was almost tolerable and my doctor said that
> I could go back to work part-time and try to resume my daily routine.  I gave this note
> to my HR Manager and he stated that there was no part-time work available.  Therefore,
> I continued to pursue LTD

On or about October 20, 2004, Plaintiff wrote a follow-up letter to Mr. Isdell (Doc. No. 25, A.R.

LL0101).  In her October 20, 2004, letter, Plaintiff states:

> This is truly a shame because now that [sic] for at least a month, my new MRI
> showed no active inflammations, I can say that I am feeling more energetic and
> could go back to work full-time.  I just needed a bit more time for my medication
> to work for me.

By a letter dated February 8, 2005, Plaintiff appealed Defendant's denial of her LTD

benefits (Doc. No. 25, A.R. LL0096).  With her February 8, 2005 appeal letter, Plaintiff

provided Defendant with an Attending Physician's Statement from Dr. James Stevenson, M.D.

(Doc. No. 25, A.R. LL0097-0098).  According to the Attending Physician's Statement dated

February 1, 2005, Dr. Stevenson had first seen Plaintiff on September 21, 2004 (Doc. No. 25,

A.R. LL097).  Dr. Stevenson stated that Plaintiff had a Class 5 physical impairment, i.e., a severe

limitation of functional capacity; incapable of minimum activity (Doc. No. 25, A.R. LL0098).

Dr. Stevenson also indicated that Plaintiff had a Class 4 mental/nervous impairment, i.e., unable

to engage in stressful situations or engage in interpersonal relations (Doc. No. 25, A.R. LL0098).

Plaintiff did not include any medical documentation or records from Dr. Stevenson with her

February 8, 2005, letter.

On February 16, 2005 and February 24, 2005, Defendant sent Plaintiff letters

acknowledging her appeal, supplying Plaintiff with a complete copy of her claim file, and

providing Plaintiff with an opportunity to submit additional medical records and information

which would support her claim (Doc. No. 25, A.R. LL0091-LL0092 and LL0094).

On March 24, 2005, Plaintiff submitted medical records from Dr. Stevenson's office, including progress reports dated September 21, 2004, October 11, 2004, and February 1, 2005 (Doc. No. 25, A.R. LL0077-LL0090). Along with the records, Plaintiff submitted a letter dated March 4, 2005 from Dr. Stevenson, wherein he states:

> The patient is a 54-year-old women who was diagnosed as having multiple sclerosis in January of 2005. She suffers from vertigo, ataxia and fatigue. She also suffers visual impairment. These impairments render her disabled from work.

(Doc. No. 25, A.R. LL0078).

On April 1, 2005, Defendant submitted Plaintiff's file, including the additional medical information received on appeal, for a third independent medical peer review to Dr. Bruce R. Leforce, M.D. (Doc. No. 25, A.R. LL0075-LL0076). In a report dated April 11, 2005, Dr. Leforce, a board certified neurologist, concluded that Plaintiff's complaints were not consistent with the clinical medical evidence and that the documented neurologic examination "does not support total impairment from sedentary work" (Doc. No. 25, A.R. LL0059). With respect to Plaintiff's functional limitations and restrictions, Dr. Leforce stated:

> [Plaintiff] is capable of exerting up to ten pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects including the human body. [Plaintiff] can sit most of the time with occasional standing or walking. [Plaintiff] is capable of work that is considered sedentary.

(Doc. No. 25, A.R. LL0059). Dr. Leforce determined that Plaintiff had a Class 4 physical impairment but found no objective evidence of mental/nervous impairment or cardiac impairment. Dr. Leforce reiterated that:

> [Plaintiff] is not considered significantly impaired from performing her sedentary occupation as an Administrative Specialist (Secretary) from 1/19/2004 to the present. She is capable of performing sedentary work based on the objective information provided.

11

(Doc. No. 25, A.R. LL0059).

On April 12, 2005, Defendant sent Plaintiff a letter in which it advised it was upholding the decision to deny her claim for LTD benefits (Doc. No. 25, A.R. LL0063-LL0065).  The April 12, 2005 letter concluded that Plaintiff did not meet the definition of disability under the wording of The Coca-Cola Company's Policy (Doc. No. 25, A.R. LL0063-LL064).  The April 12, 2005 letter reviewed Defendant's basis for the denial of benefits and included summaries of the independent medical reviews of Dr. Pick, Dr. Jares, and Dr. Leforce (Doc. No. 25, A.R. LL0064).  The April 12, 2005, letter included the following language with respect to Plaintiff's occupation:

> In evaluating disability, we look at how an occupation is performed in the national economy and not just with a specific employer.  In [sic] U.S. Department of Labor Occupational Description, your occupation of Administrative Specialist II is comparable to a Secretary, which requires sedentary (desk type) work capacity.  The general occupational requirements for a Secretary are: lifting, carrying, pushing, pulling 10 lbs. occasionally; mostly sitting, may involve standing and walking for brief periods of time.
>
> Although you indicate that you were unable to work due to symptoms caused by your Multiple Sclerosis condition, the medical evidence does not substantiate that your symptoms were severe enough from January 19, 2004 through present to cause a significant impairment that would preclude you from performing the sedentary work duties of your own occupation of Administrative Specialist II. Therefore, our review concludes that you do not meet the . . . definition of disability and disability benefits that were effective July 21, 2004 are not payable for this claim.

(Doc. No. 25, A.R. LL0065).  Having exhausted her administrative right to review, Plaintiff filed the instant lawsuit.

## II.    Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears

the initial burden of showing the Court, by reference to materials on file, that there are no

genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477

U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by

"showing" or "pointing out" to the Court that there is an absence of evidence to support the non-

moving party's case.  Id. at 325.  When a moving party has discharged its burden, the non-

moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions,

answers to interrogatories, and admissions on file," designate specific facts showing there is a

genuine issue for trial.  Id. at 324.

  In determining whether the moving party has met its burden of establishing that there is

no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the

Court must draw inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of

Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the

evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact, then the court should not grant the summary judgment motion.

See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.

1988).

  "[I]n an ERISA benefit denial case . . . in a very real sense, the district court sits more as

an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the

reasonableness of an administrative determination in light of the record compiled before the plan

fiduciary."  Clark v. Hartford Life and Accident Ins. Co., 2006 WL 890660, at *2 (M.D. Fla.

2006)(quoting Curran v. Kemper Nat'l Services, Inc., 2005 WL 894840, at *7 (11th Cir.

2005)(citations omitted)).

### III.   Applicable ERISA Standards

Under ERISA, the claimant "has the burden of showing that [s]he is entitled to the 'benefits under the terms of [the] plan.'" <u>Ganceres v. Cingular Wireless Health Welfare Benefits Plan For Non-Bargained Employees</u>, 2006 WL 2644919 *7 (M.D. Fla. 2006)(citations omitted). The United States Supreme Court, in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), set forth the standard of review that a court must apply when reviewing a denial of ERISA benefits: "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  The Eleventh Circuit has adopted three standards of review for plan interpretations: (1) *de novo*, applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious, applicable where the plan grants the administrator discretion, and (3) heightened arbitrary and capricious, applicable where the plan grants the administrator discretion and there is a conflict of interest.  <u>See</u> <u>Paramore v. Delta Air Lines, Inc.</u>, 129 F.3d 1446, 1449 (11th Cir. 1997); <u>see</u> <u>also</u> <u>Williams v. BellSouth Telecomm., Inc.</u>, 373 F.3d 1132, 1134-35 (11th Cir. 2004).

It is undisputed that the LTD Plan and Policy expressly grants Defendant discretionary authority to interpret the terms of the LTD Plan and Policy and determine eligibility for benefits. It is also clear that as both the LTD Plan and Policy administrator and insurer, Defendant operates under a conflict of interest.  As such, the heightened arbitrary and capricious standard of review applies.  In fact, Defendant admits that the review of its claims determination is subject to the heightened arbitrary and capricious standard of review (Doc. No. 8, ¶13).  The heightened arbitrary and capricious standard applies to both Defendant's factual determinations and to

14

Defendant's interpretation of the LTD Plan and Policy.  See Torres v. Pittson Co., 346 F.3d 1324, 1329 (11th Cir. 2003).

Applying the heightened arbitrary and capricious standard, the Court must evaluate Defendant's decision from the perspective of a *de novo* review[6] and determine whether it is "wrong." See HCA Health Services of Georgia v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001)(citing Godfrey v. Bellsouth Telecommunications, Inc., 89 F.3d 775, 758 (11th Cir. 1996); see also Brown v. Blue Cross & Blue Shield of Ala., 898 F.2d 1556, 1566-1567 n.12 (11th Cir. 1990), cert. denied, 498 U.S. 1040 (1991).  A decision is "wrong" if, after reviewing the administrative record that was before the claims administrator at the time that the decision was made, the Court disagrees with Defendant's decision.  See HCA Health, 240 F.3d at 993 n. 23.

If the Court determines that Defendant's decision was not wrong, the Court's inquiry ends and summary judgment is entered in favor of Defendant.  See Williams, 373 F.3d at 1138. If, however, the Court determines that Defendant's decision is wrong, the Court must determine whether Defendant's decision is reasonable.  See HCA Health, 240 F.3d at 994.

Since Defendant suffers from a conflict of interest, Defendant's decision is not necessarily entitled to deference if the Court determines that Defendant's decision is wrong, but reasonable.  See id.  Instead, under the heightened arbitrary and capricious standard of review,

---

[6]When the Court makes the initial determination regarding whether Defendant's decision was wrong, it is a *de novo* review in the sense that the Court reviews the denial of Plaintiff's claim based on the administrative record without deference or any presumption of correctness. As such, *de novo*, when used to refer to the Court's initial review under the heightened arbitrary and capricious standard, does not mean exactly the same thing as when the term is used to describe one of the three ERISA standards of review.  See Parness v. Metropolitan Life Ins. Co., 291 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2003).

the burden shifts to Defendant to prove that its decision is not tainted by self-interest.  See id.

Defendant can satisfy this burden by showing that its wrong but reasonable decision benefits the

class of participants and beneficiaries.  See id. at 994-95.  Even if Defendant satisfies this

burden, Plaintiff may still be successful if he can show by other measures that Defendant's

decision was arbitrary and capricious.  See id. at 995.  If the Court finds that Defendant fails to

show that its decision benefits the class of participants and beneficiaries, Defendant's decision

will not be entitled to deference.  See id.

**IV.      Defendant's Motion for Summary Judgment**

Defendant asserts that it is entitled to summary judgment because its decision to deny

Plaintiff LTD benefits was not wrong or unreasonable in view of the administrative record.

Upon review of the record and the pleadings, the Court finds that Defendant is entitled to

judgment as a matter of law.

Defendant's decision to deny LTD benefits was not wrong in that it was consistent with

the language of the LTD Plan and Policy and based upon objective facts in the relevant medical

records.  As defined in the LTD Plan and Policy,  **"Disability"** or "**Disabled**" means:

i.       if the Covered Person is eligible for the 24 Month Own Occupation benefit,
         **"Disability"** or "**Disabled**" means that during the Elimination Period and the
         next 24 months of Disability the Covered Person, as a result of Injury or Sickness,
         is unable to perform the Material and Substantial Duties of his Own Occupation;
         and

ii.      thereafter, the Covered Person is unable to perform, with reasonable continuity,
         the Material and Substantial Duties of Any Occupation.

(Doc. No. 25, A.R. LL0006).

**"Material and Substantial Duties"** means responsibilities that are normally required to
perform the Covered Person's Own Occupation, or any other occupation, and cannot be
reasonably eliminated or modified.

16

(Doc. No. 25, A.R. LL0007).

> **"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.  For the purposes of determining Disability under this policy, [Defendant] will consider the Covered Person's occupation as it is normally performed in the national economy.

(Doc. No.  25, A.R. LL0008).

Plaintiff has not met her burden of establishing that she cannot perform the functions of her occupation, which is appropriately classified as sedentary according to the U.S. Department of Labor Dictionary of Occupational Titles.  Defendant does not dispute that Plaintiff's diagnosis of multiple sclerosis is supported by objective medical evidence (Doc. No. 22, fn. 3).   Rather, Defendant concluded, after a review of Plaintiff's medical records, the Occupational Analysis by Ms. Purtell, and independent medical reviews of Dr. Pick, Dr. Jares, and Dr. Leforce, that Plaintiff was capable of performing her occupation.  According to Defendant, the objective medical findings[7] indicate that Plaintiff has the ability perform the general occupational requirements for a secretary.

The fact that Plaintiff has been diagnosed with multiple sclerosis does not, by itself, show that Plaintiff is unable to work.  See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 880 (9th Cir. 2003).   Plaintiff never treated with an orthopedist or submitted any diagnostic testing to demonstrate any type of physical impairment beyond the soft tissue strain from her automobile accident.  Dr. Wilson and Dr. Stevenson, both of whom are neurologists, were treating Plaintiff for multiple sclerosis and not any orthopedic impairments.  Accordingly,

---

[7]To the extent Plaintiff contends that her subjective complaints are sufficient to withstand Defendant's motion for summary judgment, the Court finds this argument unavailing.  See Hufford v. Harris Corp., 322 F. Supp. 2d 1345, 1355 (M.D. Fla. 2004).

there are no objective medical findings to support physical restrictions and limitations based upon any purported orthopedic disability due to Plaintiff's automobile accident.

In Dr. Wilson's Attending Physician's Statement of June 12, 2004 he opined that Plaintiff has a Class 4 physical impairment due to her multiple sclerosis, i.e., a moderate limitation of functional capacity, capable of clerical/administrative activity (Doc. No. 25, A.R. LL0294).  Dr. Wilson also completed a Functional Capacities Form wherein he indicated that in an average 8 hour work day, Plaintiff could occasionally, i.e., up to 1/3 of the time, sit, drive, lift up to 10 pounds, and repetitively use her wrists, elbows, and ankles (Doc. No. 25, A.R. LL0144). However, he further opined that Plaintiff was completely unable to stand, walk, squat, bend, kneel, climb, push, pull, reach, grasp, repetitively use her shoulders, or lift more than 10 pounds (Doc. No. 25, A.R. LL0144).  Dr. Wilson's limitations that Plaintiff was unable to walk etc. are not borne out by his own office notes.  Specifically, on May 17, 2004,  Dr. Wilson's neurological examination of Plaintiff was normal and her gait was steady (Doc. No. 25, A.R. LL0242).  In short, based upon the records submitted by Dr. Wilson, Defendant was not wrong in its determination that Plaintiff was capable of performing her sedentary occupation.

In Dr. Stevenson's Attending Physician's Statement dated  February 1, 2005 he opined that Plaintiff was incapable of even minimal activity (Doc. No. 25, A.R. LL0098).  However, Dr. Stevenson never examined Plaintiff prior to September 21, 2004, and therefore, had no knowledge of Plaintiff's condition during the Elimination Period[8] and on July 17, 2004.[9]

---

[8]The greater of:
a.        the end of the Covered Person's Short Term Disability Benefits; or
b.        180 days.
(Doc. No. 25, A.R. LL0003).

[9]Plaintiff was not eligible to receive LTD benefits until July 17, 2004.

Specifically, the LTD Plan and Policy states that the claimant must be disabled during the Elimination Period. As such, Dr. Stevenson's findings on September 21, 2004, do not impact the question of whether Plaintiff was disabled during the entire Elimination Period and on July 17, 2004, as required by the LTD Plan and Policy. However, even if Dr. Stevenson's opinion that Plaintiff was unable to work was considered, it is similarly without objective support and appears contrary to his own records. By way of example, in his September 21, 2004, office notes, Dr. Stevenson categorizes Plaintiff's impairments with respect to physical function as "slight" (Doc. No. 25, A.R. LL0089).

As further evidence that Plaintiff has not met her burden of establishing that she could not perform her job, on September 22, 2004 Plaintiff wrote a letter to Mr. Isdell, Chairman of the Board of The Coca-Cola Company, in which she advised that the reason she was still pursing her disability claim was because The Coca-Cola Company had refused her request to return to work part-time (Doc. No. 25, A.R. LL0100). A month later Plaintiff again wrote Mr. Isdell and stated she felt she could return to work full-time (Doc. No. 25, A.R. LL0101).

In responding to Defendant's motion for summary judgment, Plaintiff relies on the holding of <u>Stenner v. Unum Life Ins. Co. of America</u>, Case No. 8:01-cv-763-T-17TGW (M.D. Fla. 2002)[10] without utilizing the correct LTD Plan and Policy language or arguing the merits of the instant case. In fact, the Court notes that Plaintiff literally included four pages of typed excepts from the <u>Stenner</u> opinion as part of her response to Defendant's motion for summary judgment. The issues before this Court are case specific and since the <u>Stenner</u> case involved different policy terminology and facts, the Court finds it inapposite to the present dispute.

---

[10]An unpublished opinion.

Although the Court is not certain, it appears that Plaintiff argues that Defendant improperly used a job description from the Department of Labor's Dictionary of Occupational Titles ("DOT") to define Plaintiff's job instead of relying on the actual duties of Plaintiff, to define her "Own Occupation."  The dispute centers on the meaning of the phrase "Own Occupation" as used in the LTD Plan and Policy.

Plaintiff, by arguing she was physically unable to return to her job at The Coca-Cola Company, relies on her specific job duties - that she "must be able to walk around a multilevel level [sic] non air-conditioned plant posting materials in on [sic] plant bulletin boards." Defendant, on the other hand, relies on the DOT definition to define Plaintiff's occupation.

"The DOT, which groups various jobs into 'occupations' based on their similarities, is routinely used to define 'occupations in the United States economy.'" Stiltz v. Metropolitan Life Ins. Co., 2006 WL 2534406, at *6 (N.D. Ala. 2006)(citations omitted).  Here Plaintiff did not specifically compare and contrast the duties of her job as an Administrative Specialist II with those set forth in the DOT description for a secretary.  Instead, Plaintiff appears to contend that her job involves more strenuous activity than that considered by Defendant.

Here, the LTD Plan and Policy expressly defines "Own Occupation" as Plaintiff's occupation as it is normally performed in the national economy.  As such, Defendant was not required to consider Plaintiff's specific job duties at The Coca-Cola Company in particular.  See Becker v. Hartford Life & Accident Ins. Co., 2006 WL 1360928, *7 (M.D. Fla. 2006); see also Richards v. Hartford Life & Accident Ins. Co., 356 F. Supp. 2d 1278, 1287 (S.D. Fla. 2004). Therefore, Defendant was not wrong in relying on the general duties of the relevant occupation rather than considering any specific duties particular to Plaintiff's job with The Coca-Cola Company.

20

Upon review of the LTD Plan and Policy and the administrative record, this Court cannot categorize Defendant's denial of Plaintiff's claim as wrong.  The LTD Plan and Policy support the job description applied by Defendant in denying LTD benefits and the medical records support a finding that Plaintiff could perform sedentary work.  Because the Court finds that Defendant's decision in denying LTD benefits was not wrong, under <u>Williams</u> that is the end of our inquiry.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Defendant's Motion for Summary Judgment (Doc. No. 22) is **GRANTED**;

(2)     The pretrial conference scheduled for November 9, 2006, is hereby cancelled; and

(3)     The Clerk is directed to enter judgment in favor of Defendant and close this case.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of November, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record